UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARY L. CARR, )
    Plaintiff, )
     )
v. )
     )  Civ. Action No. 09cv10502-NG
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )
GERTNER, D.J.

## MEMORANDUM AND ORDER
September 30, 2010

### I.     INTRODUCTION

Plaintiff Mary Carr ("Carr") appeals from the denial of her application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA"). Carr argues that the Administrative Law Judge ("ALJ") failed to support her adverse credibility finding with substantial evidence in the record. Carr also argues that the ALJ failed to apply the correct standard to the medical opinions submitted by Carr's treating physicians and a physician who reviewed Carr's medical records but did not examine her. I agree that the ALJ's credibility determination was not based in substantial evidence and that the ALJ improperly relied on the medical opinion of the physician consulted by SSA. Consequently, Plaintiff's Motion For Order Reversing the Decision of the Commissioner **(document #14)** is **GRANTED** and Defendant's Motion for Order Affirming the Decision of the Commissioner **(document #19)** is **DENIED**.

## II.     BACKGROUND

Carr is a forty-six-year-old woman who claims that chronic headaches and frequent migraines, exacerbated by depression, have prevented her from working on a "regular and continuing basis" since June 9, 2006, the date at which she sets her onset of disability. Administrative Record ("A.R.") at 19 (document #12).

Carr filed an application for SSDI benefits on September 21, 2006, claiming that her period of disability began on June 9, 2006. Id. at 43, 113. Her application was denied on May 7, 2007. Id. at 51. Carr's Request for Reconsideration was denied on January 10, 2008. Id. at 48-50. On February 21, 2008, Carr requested a hearing before an ALJ, which was held on November 7, 2008. Id. at 15, 58. On November 21, the ALJ issued a written decision finding that Carr was not eligible for benefits. Id. at 4-15. The denial of benefits became final on February 12, 2009, when the Decision Review Board affirmed the ALJ's decision. Id. at 1. Carr filed a timely appeal in District Court on April 1, 2009. Compl. at 4 (document #1).

### A.     Carr's Pain Allegations

Carr states that her long-standing problem with headaches and migraines worsened in late 2005, and that from that point until she was laid off on June 9, 2006, she was absent from work an average of fifteen hours of per week because of her headaches. Id. at 19-20, 101, 105, 113, 186. Throughout 2006 and 2007, Carr reported to her doctors that she had worsening, nearly daily headaches and weekly migraines. Id. at 195, 199, 212, 221. At her hearing before the ALJ in 2008, Carr reported having headaches every day, more severe migraines between three and five days each week, and a monthly migraine lasting ten to twelve days. Id. at 19-20, 22-23.

Carr's more severe headaches are associated with pain, memory and concentration deficits, sensitivity to light and sound, drooping of the right side of her face and right eye, slurred speech, nausea, and fatigue. <u>Id.</u> at 145, 186. She reports that driving, looking at computer screens, bending, and exposure to loud sounds and bright light can trigger or exacerbate her headaches. <u>Id.</u> at 141, 143-45. In 2007, Carr began to report depression and anxiety. <u>Id.</u> at 198, 212, 214, 217, 236. Carr has taken a variety of medications intended either to prevent headaches or minimize pain, including Topamax, propranolol, and Vicodin (hydrocodone). <u>Id.</u> at 299, 303. Carr also reports needing to take naps or rest a substantial portion of the day to manage her fatigue and pain. <u>Id.</u> at 32-33, 156, 159, 283.

Based on Carr's record of her headaches between January and October 2008, she experienced approximately four-and-a-half days of mild headache, seven days of moderate headache, and fifteen days of a severe headache each month. <u>See id.</u> at 314-23. Severe headaches register between a "seven" and "ten" on a ten-point scale. <u>Id.</u> at 29. When she has a "seven" headache, Carr states that she is tired, experiences drooping on the right side of her face, will take something out for dinner in the morning, and will spend most of the day in a lounge chair in her living room. <u>Id.</u> at 32. When her headaches are an "eight" or "nine," she takes hydrocodone, which can sometimes reduce her pain to a "six," rests most of the day, and takes a two-hour nap. <u>Id.</u> at 23-24, 33-34. When the pain reaches a "ten," she states, "That's when I'm in bed. The sheets are over the -- the pillow cases, blankets, whatever is over the windows and no TV, nothing, door shut." <u>Id.</u> at 33. In September 2007, Carr reported to one of her treating doctors that headaches accompanying her periods were "10/10," that she had a "6/10" headache

three-quarters of the month, and that her headache had been absent only three days in the previous month.  Id. at 301.

Carr states that on "good days," she can sweep, put dishes in the dishwasher, make beds, clean bathrooms, prepare the evening meal, feed her cats, and sit outside watching children play. Id. at 22, 25, 140.  She estimates that meal preparation takes an hour and that she spends two hours a week doing household shopping, which worsens her pain.  Id. at 26, 34, 142-43.  She is unable to do these chores when her headache is too severe.  Id. at 127, 140-41.  She also speaks on the phone daily with family members, has occasional guests, and attends church when headaches are mild.  Id. at 26, 144.  She goes out to eat once or twice a month.  Id. at 28.

After being laid off on June 9, 2006, the day on which she states her period of disability began, Carr attended computer training at the unemployment office and went to two job interviews.  Id. at 20-21.  She stated that she attended the computer classes once a week, limited her participation because working on computers worsened her pain, and stopped taking the classes in October 2006.  Id. at 21.

Carr had most recently worked as an office manager for a jeweler.  Id. at 130.  She reported frequently lifting up to ten pounds, occasionally lifting sixty pounds, and walking, standing, sitting, reaching, and writing eight hours a day as part of that job.  Id. at 36, 114, 131.

**B.     Treating Physicians**

Carr submitted medical opinions and treatment records from her primary care physician, Dr. Hoye, and one of her treating neurologists, Dr. Pomorska.  Id. at 166-172, 183-225, 232-76, 283-309.  She also submitted treatment records from another treating neurologist, Dr.

McGeeney, and her counselor, Dr. Cabezas. Id. at 277-82, 210-12. SSA obtained a physical residual functional capacity assessment from Dr. Colb, who did not examine Carr. Id. at 176.

Dr. Hoye saw Carr frequently for treatment of headaches, which he diagnosed as "chronic migraine." Id. at 183. In a September 21, 2006, note to the unemployment office, Dr. Hoye wrote that Carr would be unable to participate in job retraining activities until a neurologist evaluated and treated her. Id. at 199-200. Dr. Hoye's April 3, 2007, report to SSA described Carr's prognosis as good, indicated no abnormal motor, reflex, sensory, motor, or ambulatory functions, and noted "severe near daily headache limit [sic] ability to work." Id. at 183-84. On May 14, 2008, Dr. Hoye completed a pain questionnaire indicating that Carr's medically determined impairment resulted in pain that precluded the concentration and productivity required by sustained, full-time employment. Id. at 267.

Dr. Pomorska, one of Carr's neurologists, found that Carr had "intractable migraine." Id. at 299. Her evaluation for the SSA, completed on January 18, 2007, stated that Carr's headaches were triggered by driving and computer use or occurred without explanation, that Carr had short-term memory loss and problems sustaining attention, and that her symptoms "limit her abilities to understand and function." Id. at 287. Three brain imaging studies in 2006 and 2007 revealed no abnormalities. Id. at 172, 276, 297.

Dr. McGeeney, Carr's other neurologist, did not supply a report to the SSA. His treatment notes from May 19, 2008, stated that Carr's headaches were improving, that she no longer spent days at a time in bed, and that she "does not work outside the home but it [sic] able to go about her daily activities generally even with headache." Id. at 278. In August of 2008, he

noted continuing chronic daily headache with migraines and indicated that Carr was "alert, oriented, and attentive in the office with normal speech and fluent language." Id. at 277.

### C.     SSA Physician

The SSA consulted another physician, Dr. Colb, who reviewed Carr's medical records but did not examine Carr. Id. at 174. Dr. Colb's May 2007 report stated that Carr could occasionally lift twenty pounds; frequently lift ten pounds; stand or walk for a total of 6 hours in an 8 hour work day, with normal breaks; sit for 6 hours of an 8-hour work day, with normal breaks; and push and/or pull for an unlimited duration. Id. at 176. Where asked to explain "how and why the evidence supported these conclusions," Dr. Colb wrote, "Migraine - per TP, frequent headaches; 3/26/07 neuro exam entirely normal." Id. at 176. He also checked off boxes indicating that Carr was limited to occasional postural actions (such as climbing, stooping, and crawling), but did not indicate, where asked, how and why the evidence supported his conclusion. Id. at 177. Dr. Colb also indicated that he either did not have access to an examining source or did not have access to a functional assessment by an examining source. Id. at 181.

### D.     The Vocational Expert's Testimony

At the hearing, Carr testified as to the course of her symptoms and her functional limitations. A vocational expert also testified that jobs were available for someone of Carr's background who could perform light or sedentary work and who had moderate limitations in ability to concentrate and withstand normal work pressures. Id. at 38-40. The vocational expert also stated that if Carr needed to lie down for up to an hour on a normal workday, outside of

normal breaks, or if she missed more than one day a month, there would be no jobs available for her.  Id. at 40-41.

### E. The ALJ's Decision

To determine whether an individual is eligible for disability benefits under the Social Security Act, the ALJ must follow a five-step process.  20 C.F.R. § 404.1520(a)(4) (2010).  The ALJ must evaluate (1) whether the claimant has shown he is not currently performing any "substantial gainful activity"; (2) whether the claimant's impairment is severe and meets the duration requirement; (3) whether the impairment meets or equals an impairment contained in the regulations; (4) whether the claimant's impairment prevents him from performing his past work; and (5) whether the claimant is able to perform other work of the sort found in the national economy.  Id.  The burden is on the claimant in the first four steps; in the fifth, the burden shifts to the SSA.  E.g., Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

At the first step, the ALJ determined that Carr was not engaged in substantial gainful activity.  A.R. at 9.  The ALJ then determined that Carr's "daily headaches as well as migraines occurring several times a month" imposed a severe impairment but that her depression and anxiety did not.  Id. at 9-10.

Because the SSA does not specify Carr's condition as disability *per se*, the ALJ made an independent assessment of Carr's residual functional capacity (RFC) to determine whether Carr was able to engage in work-related activities in light of her severe impairment.  Id. at 11.  The ALJ listed several factors pertinent to her RFC determination: the alleged frequency, duration, and severity of Carr's headaches and migraines; her migraine triggers; Carr's statement that medication would reduce her pain from an "eight" to a "six" on a ten-point scale; Carr's

allegation that her concentration and memory were impaired; drowsiness induced by Carr's medications; Carr's treatment for depression starting in February 2008; her work history; her treatment history; and her stated daily activities. Id. at 12.

The ALJ elaborated on only Carr's work history and daily activities. The ALJ's work history discussion noted that Carr was laid off on June 9, 2006, and that she subsequently took computer courses, applied for jobs, and went on job interviews. Id. at 9 n.1, 12 n.3. With regard to Carr's daily activities, the ALJ noted:

> despite [Carr's] allegations of incapacitating symptoms and that she needed to lie down on a daily basis she still acknowledged in her function report and/or at the hearing that she did some meal preparation, housework, shopping, driving and cared for her 2 cats; after her alleged onset date she used computers at the State unemployment office to hone her skills, was involved in training until October 2006, applied for jobs and had 2 job interviews . . . .

Id. at 12. The ALJ found that the "intensity, persistence, and limiting effects" of Carr's pain were not as severe as Carr contended. Id. at 11-12. She then determined that Carr was capable of performing work at the light exertional level. Id.

In reaching her RFC determination, the ALJ assigned significant probative weight to the medical opinion provided by Dr. Colb and minimal weight to the opinions of Dr. Hoye and Dr. Pomorska. Id. at 12-13. She found Dr. Colb's assessment of Carr's functional capacity consistent with and supported by the record as a whole and therefore "entitled to significant probative weight." Id. at 12. She assigned minimal weight to Dr. Pomorska's opinion because the opinion reached a legal conclusion reserved to the Commissioner and was inconsistent with the record. Id. at 12-13. The ALJ also assigned minimal weight to Dr. Hoye's opinion that Carr's pain precluded sustained concentration and productivity for full-time employment because

it reached a conclusion reserved to the Commissioner, was provided by a non-specialist, was non-specific to functional limitations, and was inconsistent with the record as a whole. Id. at 13.

The ALJ assigned Carr an RFC for light exertional work that did not require sustained concentration or independent judgment. Id. at 11, 13 n.4. The ALJ determined that Carr was not disabled based on the vocational expert's testimony that work was available for someone with Carr's background who had these limitations. Id. at 15.

## III. STANDARD OF REVIEW

Judicial review of an ALJ's decision is limited to determining whether the ALJ applied the proper legal standards and whether the factual determinations were supported by substantial evidence. 42 U.S.C. § 405(g) (2006); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). An ALJ's findings are supported by substantial evidence as long as a reasonable person could deem the evidence adequate to support the ALJ's conclusion. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Reaching factual conclusions and assessing credibility of witnesses is the responsibility of the ALJ, not the court. E.g., id. The court must defer to the ALJ's factual conclusions if the ALJ clearly stated the grounds on which he relied. Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010). An ALJ must provide an " accurate and logical bridge" between the evidence and his conclusion. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

## IV. ANALYSIS

The ALJ found that Carr's symptoms were not severe enough to prevent Carr from working. In reaching this conclusion, the ALJ determined that Carr's pain was not as severe or limiting as Carr claimed, relying on the medical opinion of a physician who did not examine

Carr but found that Carr was capable of functioning at a level consistent with full-time employment. While the ALJ made the proper inquiry into factors bearing on the evaluation of subjective symptoms, the ALJ's credibility finding was not based on substantial evidence. In addition, the ALJ did not apply the proper legal standard to the medical opinion provided by a physician who did not examine Carr. The ALJ wrongly rejected Carr's reports of pain as being inconsistent with her reported activities and gave more weight to Dr. Colb's opinion than regulations allow.

### A.      Credibility determination

Carr argues that the ALJ's adverse credibility determination was not based in substantial evidence. The ALJ based her credibility determination on narrow grounds: She found that Carr's reported pain and limitations were inconsistent with her reported activities. Substantial evidence does not support this conclusion. While there may be other inconsistencies on the record to support an adverse credibility determination, the ALJ's findings should be evaluated based on the evidence and rationale the ALJ presented. See Larlee, 694 F. Supp. 2d at 84. The ALJ's improper credibility determination requires remand for a credibility determination consistent with the record.

Credibility determinations, while the sole responsibility of the ALJ, "must be supported by substantial evidence[,] and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). See also Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996) (requiring adjudicators to clearly state the reasons for their credibility findings rather than list the factors relevant to their decisions). An adequately

explained and supported credibility determination should ordinarily be given substantial deference. Castro v. Barnhart, 198 F. Supp. 2d 47, 52 (D. Mass. 2002) (citing Becker v. Sec'y of Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990)).

When a disability claim rests on severe pain that exceeds what can be established through objective medical findings but is consistent with a diagnosed medical condition, an ALJ must inquire into several factors, including the claimant's descriptions of her pain and her daily activities, to assess the extent and limiting effects of the claimant's pain. 20 C.F.R. § 404.1529 (2010); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 22-23 (1st Cir. 1986); Social Security Ruling (SSR) 96-7, 61 Fed. Reg. at 34,485. The ALJ properly inquired into these factors, as shown by her listing of pertinent factors from the record in her RFC analysis and her relevant inquiries during the oral hearing. See Guyton v. Apfel, 20 F. Supp. 2d 156, 166 (D. Mass. 1998) (approving the ALJ's inquiry into the Avery factors where the ALJ asked questions pertaining to each factor and mentioned the information in her decision). Although the ALJ made the proper inquiry into Carr's pain, she improperly concluded from this inquiry that Carr was not fully credible.

The ALJ's adverse credibility determination rests on inconsistency between Carr's reported severity of pain and her reported activities. The ALJ listed evidence relevant to her evaluation of Carr's pain and functioning, but only when discussing daily activities did she make specific findings as to a factor's bearing on Carr's credibility. The ALJ stated that "despite [Carr's] allegations of incapacitating symptoms" and her alleged need "to lie down on a daily basis," Carr also had admitted to "meal preparation, housework, shopping, driving and car[ing] for her 2 cats" and had acknowledged that she "used computers at the State unemployment office

-11-

to hone her skills, was involved in training until October 2006, applied for jobs and had 2 job interviews." A.R. at 12.  In essence, the ALJ found Carr's level of activity inconsistent with the degree of pain and impairment she alleges.

Substantial evidence does not support the ALJ's characterization of Carr's activities or her finding an inconsistency between Carr's stated activities and symptoms.  A fair characterization of Carr's activities would note that she reported engaging in these activities on "good days," that meal preparation takes an hour when she does it, that she spends about two hours a week shopping, that she limits her driving, and that her computer training classes were once a week for an hour.  Id. at 20-22, 25-26, 34, 140, 143-44.  Carr also reported severe headaches approximately fifteen days out of the month and reported that she rested for most or all of the days that she had severe headaches.  Id. at 23-24, 33-34.  Carr's reported level of activity is not inconsistent with her reported level of impairment, which was described as sometimes incapacitating, forcing her to rest, and other times mild enough to allow her to do chores and errands.  See Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) (finding that a general reference to "driving" as an activity does not itself discredit claims of incapacitating back pain when the ALJ did not know how often or how recently the claimant drove); Rohrberg v. Apfel, 26 F. Supp. 2d 303, 308-09 (D. Mass. 1998) (finding that ALJ improperly drew conclusions about plaintiff's credibility and RFC by failing to make a substantial enough inquiry into reported daily activities to adequately explain "their reflection on functional abilities"); Waters v. Bowen, 709 F. Supp. 278, 284 (D. Mass. 1989) (noting that performing household chores and errands, especially on an intermittent basis, is unlikely to be substantial evidence of the capacity to engage in sustained activity that undermines a claim of disabling pain).

Carr asserts that the ALJ also discredited her claim because Carr looked for work after the date on which she states her disability began. Carr argues that the ALJ concluded Carr did not believe that she was incapable of work and applied for benefits only when she was unable to find work. Pl.'s Mem. 24 (document #15). At most, however, the ALJ hinted at this line of reasoning. She made no specific findings as to Carr's actual belief in her ability to work based on her job search activities or the effect this would have on Carr's credibility. The overarching implication of the ALJ's credibility finding was that Carr was not as limited by her pain as she claimed because she was still able to engage in certain activities. This Court will not speculate about other conclusions the ALJ may have drawn if the ALJ did not clearly present them. See Larlee, 694 F. Supp. 2d at 84.

The Commissioner also suggests that Carr made a number of directly contradictory statements regarding the frequency of her symptoms. Def.'s Mem. 19 (document #20). The ALJ did not draw this conclusion, however. She explicitly accepted Carr's claim to daily headaches and several migraines a month in determining that she had a severe impairment. A.R. at 10.

### B.     Evaluation of medical opinions

The ALJ simply did not have enough medical information to assess Carr's RFC. Although the ALJ correctly found the opinions of Carr's treating physicians too insubstantial to inform her RFC determination, the ALJ improperly assigned substantial weight to the functional assessment of Dr. Colb, the non-examining physician consulted by the SSA. The ALJ's reliance on Dr. Colb's medical opinion requires remand for further medical assessment of Carr's functional capacity.

An ALJ's RFC determination usually must be supported by a medical assessment of the claimant's functional capacity. Rodriguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) ("Where the record is bereft of any medical assessment of residual functional capacity, this court has found a lack of substantial evidence to support a finding that exertional impairments are not disabling, since the ALJ is not qualified to assess residual functional capacity on the basis of bare medical findings."); Rohrberg, 26 F. Supp. 2d at 311 (finding no substantial evidence to support the ALJ's RFC determination where there was no "proper, medically determined RFC in the record"). A medical opinion is required to relate medical findings and limitations to the claimant's ability to perform specific functions, such as lifting, sitting, standing, and walking. Id. (citing Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 292 (1st Cir. 1986)).

### 1. Treating Physicians' Opinions

Carr asserts that the opinions from her treating physicians, who stated that Carr's pain limited her functioning and ability to work, merited controlling weight in the ALJ's disability determination. Her doctors' broad statements about her ability to work did not require the ALJ's deference. The ALJ was right to assign these opinions minimal weight.

An ALJ may assign controlling weight to opinions from treating physicians that are medically supported and consistent with the record. 20 C.F.R. § 404.1527(d)(2) (2010). See also Shaw v. Sec'y of Health & Human Services, 25 F.3d 1037, No. 93-2173, 1994 WL 251000, at *3 (1st Cir. June 9, 1994) (table decision); Berrios-Velez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005). If the ALJ does not give controlling weight to the treating physician, he must always provide a good reason. 20 C.F.R. § 404.1527(d)(2). When an ALJ does not assign

controlling weight to a treating doctor's opinion, he should weigh opinion in light of the duration of the treatment relationship, the nature and extent of the treatment relationship, supporting evidence that explains the opinion, whether the source of the opinion specializes in a sub-field relevant to the impairment, and other factors affecting the authority of the opinion. Id. § 404.1527(d)(2)-(6). No special weight attaches to opinions concerning the dispositive legal question of the claimant's ability to work, which is reserved for the Commissioner. Id. § 404.1527(e)(1)-(3).

The ALJ appropriately assigned minimal weight to the opinions offered by Carr's treating physicians, Dr. Hoye and Dr. Pomorska. Dr. Hoye's opinion that Carr could not sustain the concentration and productivity required by full-time employment warrants minimal weight because, as the ALJ noted, Dr. Hoye reached a conclusion about Carr's ability to work rather than a medical opinion about Carr's specific functional limitations. See id. § 404.1527(e)(1). Although the ALJ did not address Dr. Hoye's earlier report to the SSA, which stated that Carr's severe pain limited her ability to function, this opinion shed no light on the degree or type of Carr's functional limitation and warranted minimal weight in the ALJ's RFC determination.

The ALJ also properly assigned minimal weight to Dr. Pomorska's opinion that Carr's headaches were triggered by driving and computer use and limited her ability to understand and function. The ALJ was wrong to reject Dr. Pomorska's opinion as reaching legal rather than medical conclusions, because the opinion addressed the medical issue of Carr's functional limitations rather than the legal issue of her ability to work. However, the ALJ was still right to minimize Dr. Pomorska's opinion because she offered little assessment of specific functional capabilities.

### 2. The Non-Treating Physician's Opinion

Since Dr. Hoye's and Dr. Pomorska's opinions provided an insufficient basis for an RFC determination, the question remains whether Dr. Colb's report prepared for the SSA provided a an adequate functional assessment. An opinion from a state agency medical consultant who does not examine a claimant should be assessed in light of the consultant's medical specialty or expertise, the opinion's consistency with the record as a whole, the support for the conclusion offered by the consultant, and other factors relevant to weighing the opinion. 20 C.F.R. § 404.1527(f)(2)(ii).

The ALJ's deference to Dr. Colb's terse functional assessment is troubling. The ALJ stated that she found his opinion consistent with the record, but made no mention of any other factors that influenced her decision to afford his conclusions significant weight. We do not know whether Dr. Colb was a neuorologist or what records he reviewed. His opinion provided no meaningful explanation of his functional assessments. From all appearances, the ALJ's confidence in Dr. Colb's RFC evaluation is misplaced, given the cursory nature of his evaluation, his status as a non-treating physician who did not even examine Carr, and the absence of factors tending to bolster the reliability of his opinion. See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (stating that functional assessments by non-examining physicians that consist of checking off boxes relating to functional abilities and provide no explanations for these findings ordinarily are entitled to little weight). Dr. Colb's opinion was inadequate to support the ALJ's conclusions about Carr's functional capacity. Without an adequate medical opinion on the record, the ALJ was obligated to seek a sufficiently credible

and specific medical opinion in order to evaluate Carr's disability claim. See 20 C.F.R. § 404.1512 (2010). I remand so that the ALJ may seek this information.

## V.    CONCLUSION

The Claimant's Motion For Order Reversing the Decision of the Commissioner **(document #14)** is **GRANTED** and the Defendant's Motion for Order Affirming the Decision of the Commissioner **(document #19)** is **DENIED**. I **REVERSE** the Commissioner's decision and **REMAND** for further proceedings consistent with this opinion.

**SO ORDERED.**

**Date:   September 30, 2010**          */s/ Nancy Gertner*
                                        **NANCY GERTNER, U.S.D.C.**